**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **Magistrate No. 20-1002** |
| **LORE-ELISABETH BLUMENTHAL** | : | |

## GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

The government, by and through its attorneys, William M. McSwain, United States Attorney, and Amanda R. Reinitz, Assistant United States Attorney, hereby submits this Motion For Pretrial Detention to assist the Court in the Detention Hearing scheduled for Friday, June 19, 2020.

The defendant is charged with intentionally setting fire to two Philadelphia Police Department ("PPD") vehicles on May 30, 2020. On this day, the defendant traveled to lawful protests being held in Center City Philadelphia armed not with a protest sign, but rather with heat-resistant gloves and goggles. Video and photographic footage shows her using those tools as she placed flaming cardboard into a PPD sedan. After the fire began to engulf the sedan, the defendant removed a burning piece of wood (part of PPD barricades set up in the area of City Hall) from the sedan and forced it through a window of a PPD SUV parked to the side of the sedan, setting that second vehicle on fire. When the defendant decided to set fire to these vehicles, she risked the lives of numerous individuals who were in the vicinity of these vehicles. She destroyed two police vehicles – vehicles that are used by the Police Department to respond to emergencies and protect the citizens of Philadelphia. The defendant has shown, through her

own actions on May 30, that she poses a substantial risk to the community, and must be detained pending trial.

Defendant Blumenthal has been charged by complaint with two counts of 18 U.S.C. §§ 844(f)(1), 844(f)(2), and 2. If convicted of 18 U.S.C. § 844(f)(2), she faces a mandatory minimum sentence of 7 years on each count, and up to a maximum of 80 years in prison. The substantial penalties faced by the defendant provide a powerful incentive for her to flee.

On June 15, 2020, when a search warrant was served on the defendant's house, the defendant refused to open the door for law enforcement who clearly identified themselves. Law enforcement was left with no choice but to force their way into the defendant's home. Upon seeing agents gain entry, the defendant began running through the house to attempt to avoid apprehension. The defendant resisted arrest so vigorously that two law enforcement officers were necessary to place handcuffs on the defendant. Her obstructive conduct continued even after she was transported to the Federal Building for processing. The defendant has thus demonstrated that she has no intention of adhering to any requirements imposed by the justice system. It is clear that no conditions exist that will assure her appearance in this case.

As there are no conditions or combination of conditions that will reasonably assure the defendant's appearance as required or the safety of the community, the government moves pursuant to 18 U.S.C. §§ 3142(e) and 3142(f)(1)(A) and (f)(2) for a detention hearing and pretrial detention of the defendant.

## I.    THE FACTS

In support of this motion, the government makes the following representations and proposed findings of fact:

A.     <u>**Probable Cause And The Evidence In This Case**</u>

1.     There is probable cause to believe that the defendant has violated Title 18, United States Code, Sections 844(f)(1), 844(f)(2) and 2 as charged in the complaint.

2.     The evidence in this case is strong.

a.     On or about May 30, 2020, the defendant was captured in photographs, in video, and on live news footage on the north side of City Hall near two Philadelphia Police Department marked vehicles.  In photographs available to the FBI, the defendant, who was dressed in a blue T-shirt and jeans, wearing a brown/green backpack, heat-resistant white/grey gloves, goggles, multi-colored mask, and black boots, is seen throwing a flaming object at the PPD sedan.  She is also seen running from this car.  In live aerial footage and in a video posted to social media, this same woman, the defendant, was seen approaching the flaming PPD sedan, and pulling piece of wood (part of a PPD barricade) from inside the vehicle. She is then seen turning and shoving the burning piece of wood into the PPD SUV, which then catches fire.  Both vehicles were destroyed in the fires.

b.     In photographs of the defendant from that day, a distinct tattoo is seen on her inner right forearm.  This tattoo is a stylized peace sign.  Surrounding this tattoo, other tattoos are visible on her forearm, including one that moves from the wrist area up the arm of the defendant in a "wave" pattern.  When she was arrested on June 15, 2020, the defendant was found to have identical tattoos.

c.     Photographs from May 30, 2020 show that the defendant was wearing a light blue T-shirt with a slogan emblazoned on the front.  Records obtained from the seller of this shirt showed that a customer named "Lore Elisabeth" ordered an identical blue T-shirt, with this slogan, in March 2020.  The shirt was mailed to the defendant's residence, where

a search warrant was executed on June 15, 2020.  During this search warrant, this distinctive blue T-shirt was found in the defendant's bedroom.

       d.     Also found during this search was the face covering the defendant is seen wearing in footage from May 30, 2020.  Black boots that appear similar to those worn in footage from May 30 were found in the defendant's home, and another similar pair were in her car.

       e.     The backpack the defendant wore during these arsons was also found in her bedroom.  Inside the backpack were white/grey gloves, again appearing to match those the defendant wore on May 30, 2020.  There appeared to be two gloves when the gloves were first discovered.  On closer inspection, one of the gloves was "doubled up," such that there were actually a total of three gloves.  The gloves were examined by an FBI Special Agent with training in explosives who opined, based on his experience and training, that the gloves contained insulation consistent with heat-resistant materials, and that they had an elastic sealing around the wrist portion of the gloves.  The tags had been removed from the gloves.

       f.     Found in the laundry room of the defendant's home during this search were goggles appearing to match those the defendant wore on May 30, 2020.

       g.     Prior to the search warrant, law enforcement viewed video posted to a public website advertising the defendant's former employment as a massage therapist. Visible in these videos includes the defendant's distinctive stylized peace sign tattoo.  As discussed above, this tattoo was observed on the defendant when she was arrested on June 15, 2020.

       h.     The Philadelphia Police Department receives federal funding.  For example, in May 2020 the Philadelphia Police Department was in receipt of federal funding from

4

the Edward Byrne Memorial Justice Association Grant ("JAG"), identified as grants DJBX-0727 and DJBX-0465.

B.   **Maximum Penalties**

The statutory maximum penalty for violation of 18 U.S.C. § 844(f)(1) (per count) is a mandatory minimum of five years' imprisonment, up to a maximum of twenty years of imprisonment, three years of supervised release, a $250,000 fine, and a $100 special assessment. If convicted of 18 U.S.C. § 844(f)(2), based on the defendant's having created a substantial risk of injury to other persons, the mandatory minimum increases to seven years of imprisonment, and a maximum of forty years' imprisonment per count.  The sentencing judge may choose to order the mandatory minimum sentences to run concurrently or consecutively.  Thus, the defendant faces a mandatory minimum of seven years' imprisonment, with a statutory maximum of eighty years of imprisonment.

C.   **Criminal Record**

The defendant has a 2008 conviction for retail theft.  She received a sentence of Accelerated Rehabilitative Disposition ("ARD").  While she has a minimal criminal history, this did not prevent her from engaging in this violent, dangerous arson in which she put many other persons at risk of death or serious injury.

D.   **Ties to Community and View on Law Enforcement**

The defendant is currently unemployed.  She previously worked as a massage therapist.  She has resided in a home with several roommates in Philadelphia.  She now claims that she will reside with her mother in a Philadelphia suburb if released.  These ties to the community were insufficient to prevent her from engaging in violent conduct on May 30, and from resisting legitimate law enforcement directives when she was arrested.

Moreover, the defendant has demonstrated through her actions that she has no willingness to comply with the law or the lawful requirements of the justice system. She demonstrated her intent to engage in criminal activity when she went to peaceful protests armed with heat-resistant gloves and goggles. She used these tools to protect herself, though not others, when she set two police cars on fire.

She again showed her contempt for the legal system and law enforcement on June 15, 2020, during the search of her home. When law enforcement approached the defendant's home, agents repeatedly knocked and announced that they were FBI agents, with a search warrant, and asked that someone come to the door. An individual was seen looking out from an upstairs window, and agents yelled to the individual to open the door. Agents again knocked and announced at the front door that they were present with a search warrant, and requested that the door be opened. Still, no one appeared, and agents had no choice but to begin a forced entry through the initial front door, which was, in part, made of glass. Visible past the first door was a second glass door, leading from the entryway into the main house. As agents began using a ram to force open the door, the defendant appeared behind the second door, and was visible to agents. The defendant opened the second door, and began screaming at agents, asking where the warrant was, but refusing to open the front door. Agents ceased attempting to force entry on the front door, and repeatedly asked the defendant to open the door. She refused to do so. As a result, agents forced open the front door, and as agents entered the house, the defendant began running through the house, heading for the stairs, in an attempt to avoid apprehension by the agents entering the house. She was caught by an agent in the living room, and was told that she was under arrest, and was asked to place her hands behind her back. The defendant refused, continually struggling, and eventually falling to her knees as a result. A second agent had to

6

assist the first agent in order to handcuff the defendant.  The defendant continued to scream throughout this encounter.  The defendant's obstructive behavior continued through her processing when she was brought to the FBI offices, where she attempted to prevent routine booking procedures such as the photographing of her tattoos by contorting her body.

Thus, the defendant has repeatedly shown that she has no respect for either law enforcement or the criminal justice system.  Any family ties, previous employment, or other ties to the community have not been sufficient to prevent her from setting fire to two police cars – actions which placed in danger members of that community, and that destroyed police cars used to protect her community.  Accordingly, there are no conditions that would assure her appearance in this case.

## II.    CONCLUSION

The defendant committed arson by setting on fire two vehicles on May 30, 2020. She did so despite the fact that there were numerous other individuals in the immediate vicinity who could have been injured or killed by fire or explosion.  Her doing so was not by accident – she traveled to the protests taking place in the city that day outfitted with heat-resistant gloves and protective eye goggles.  By setting two vehicles on fire, she placed at risk the lives of numerous individuals who were in the immediate vicinity that day.  She also took from the community, two taxpayer-funded vehicles that exist to respond to emergencies to keep the community safe.  As a result of these actions, the defendant faces a sentence of up to eighty years in prison, with a mandatory minimum of seven years' incarceration.  She has also repeatedly shown her defiance of the criminal justice system.  An examination of all of these factors makes clear that that no condition or combination of conditions will reasonably assure the presence of the defendant as required and/or the safety of the community.

WHEREFORE, the government respectfully submits that its Motion for

Defendant's Pretrial Detention should be granted.

Respectfully submitted,

WILLIAM M. McSWAIN
United States Attorney

/s Amanda R. Reinitz
AMANDA R. REINITZ
Assistant United States Attorney

8

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA       :

      v.                          :          MAGISTRATE NO.  20-1002

LORE-ELISABETH BLUMENTHAL       :

### PRETRIAL DETENTION ORDER

AND NOW, this        day of June of 2020, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that this case is appropriate for detention because the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, and by a preponderance of the evidence that no conditions or combination of conditions that will reasonably assure the defendant's appearance as required by Title 18, United States Code, Section 3142(e).

The Court makes the following findings of fact:

1.      There is probable cause to believe that the defendant has violated Title 18, United States Code, Sections 844(f)(1), 844(f)(2) and 2 as charged in the complaint that the defendant was arrested for on June 15, 2020.

2.      The evidence in this case is strong.

a.      On May 30, 2020, the defendant was captured in photographs, in video, and on live news footage on the north side of City Hall near two Philadelphia Police Department marked vehicles.  In photographs available to the FBI, the defendant, who was dressed in a blue T-shirt and jeans, wearing a brown/green backpack, heat-resistant white/grey

gloves, goggles, multi-colored mask, and black boots, is seen throwing a flaming object at the PPD sedan.  She is also seen running from this car.  In live aerial footage and in a video posted to social media, this same woman, the defendant, was seen approaching the flaming PPD sedan, and pulling piece of wood (part of a PPD barricade) from inside the vehicle.  She is then seen turning and shoving the burning piece of wood into the PPD SUV, which then catches fire.  Both vehicles were destroyed in the fires.

        b.      In photographs of the defendant from that day, a distinct tattoo is seen on her inner right forearm.  This tattoo is a stylized peace sign.  Surrounding this tattoo, other tattoos are visible on her forearm, including one that moves from the wrist area up the arm of the defendant in a "wave" pattern.  When she was arrested on June 15, 2020, the defendant was found to have identical tattoos.

        c.      Photographs from May 30, 2020 show that the defendant was wearing a light blue T-shirt with a slogan emblazoned on the front.  Records obtained from the seller of this shirt showed that a customer named "Lore Elisabeth" ordered an identical blue T-shirt, with this slogan, in March 2020.  The shirt was mailed to the defendant's residence, where a search warrant was executed on June 15, 2020.  During this search warrant, this distinctive blue T-shirt was found in the defendant's bedroom.

        d.      Also found during this search was the face covering the defendant is seen wearing in footage from May 30, 2020.  Black boots that appear similar to those worn in footage from May 30 were found in the defendant's home, and another similar pair were in her car.

        e.      The backpack the defendant wore during these arsons was also found in her bedroom.  Inside the backpack were white/grey gloves, again appearing to match

2

those the defendant wore on May 30, 2020.  There appeared to be two gloves when the gloves were first discovered.  On closer inspection, one of the gloves was "doubled up," such that there were actually a total of three gloves.  The gloves were examined by an FBI Special Agent with training in explosives who opined, based on his experience and training, that the gloves contained insulation consistent with heat-resistant materials, and that they had an elastic sealing around the wrist portion of the gloves.  The tags had been removed from the gloves.

        f.     Found in the laundry room of the defendant's home during this search were goggles appearing to match those the defendant wore on May 30, 2020.

        g.     Prior to the search warrant, law enforcement viewed video posted to a public website advertising the defendant's former employment as a massage therapist. Visible in these videos includes the defendant's distinctive stylized peace sign tattoo.  As discussed above, this tattoo was seen on the defendant when she was arrested on June 15, 2020.

        h.     The Philadelphia Police Department receives federal funding.  For example, in May 2020 the Philadelphia Police Department was in receipt of federal funding from the Edward Byrne Memorial Justice Association Grant ("JAG"), identified as grants DJBX-0727 and DJBX-0465.

        3.     The defendant has one prior conviction for retail theft, for which she received a sentence of Accelerated Rehabilitative Disposition ("ARD").

        4.     The nature of the offense, whereby there is probable cause to believe that the defendant set two police cars on fire, while surrounded by hundreds of people, demonstrates that no condition of release, or combination of conditions, will reasonably assure the safety of any person and the community or reasonably assure the appearance of the defendant as required. 18 U.S.C. § 3142(e).

3

5.      The strength and nature of the case against the defendant, combined with the strong likelihood that the defendant will be incarcerated for a significant period of time, establishes the defendant's danger to the community and increases the high risk that the defendant will not appear as required by the Court.

Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; that the defendant be afforded reasonable opportunity for private consultation with counsel; and that, on order of a Court of the United States, or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:


_____
HONORABLE MARILYN HEFFLEY
*United States Magistrate Judge*

4

**CERTIFICATE OF SERVICE**

I hereby certify that this pleading has been served on the Filing User identified below by

email and/or through the Electronic Case Filing (ECF) system:

Paul Hetznecker, Esquire
phetznecker@aol.com

/s Amanda R. Reinitz_____
AMANDA R. REINITZ
Assistant United States Attorney

DATED: June 19, 2020

5