IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL CASE NO. 20-233 |
| v. | | (20-MJ-01002) |
| | : | |
| LORE ELISABETH BLUMENTHAL<br>    Defendant. | | |
| | : | |

**<u>FINDINGS OF FACTS & CONCLUSIONS OF LAW</u>**

**Jones, II   J.**                                                                                                       **August 20, 2020**

On June 15, 2020, a Complaint was filed against Defendant Lore Elisabeth Blumenthal, alleging two counts of Knowing, Intentional And Malicious Damage and Destruction, and Attempt, by Means of Fire, a Vehicle, Creating Substantial Risk of Injury, and Aiding and Abetting, in violation of 18 U.S.C. §˙ 844(f)(1) and (f)(2) and 18 U.S.C. §2.   (ECF No. 1.)   On June 19, 2020, the government moved for pretrial detention and a video/telephonic hearing was held before United States Magistrate Judge Marilyn Heffley that same day.   (ECF Nos. 5, 6.)   At the conclusion of said hearing, Judge Heffley denied bail for Defendant.   (ECF Nos. 6, 8.)   Defendant appealed this decision and the government responded.   (ECF Nos. 7, 9, 10.)   As Emergency Judge, the matter was assigned to the undersigned and on June 24, 2020, a brief hearing was held and continued, so that Defendant could be present.   (ECF No. 11.)   On July 1, 2020, this Court held a video/telephonic hearing, during which counsel for Defendant and the government were in attendance, as were Defendant, her mother, her brother, a representative from Pretrial Services, the assigned FBI agent, the assigned Task Force Officer, and a reporter

from the *Philadelphia Inquirer* newspaper.    At the conclusion of said hearing, this Court directed the parties to provide additional materials and held the matter under advisement pending receipt of same. On July 20, 2020 and July 22, 2020, said materials were submitted to the court.   On August 3, 2020, a second hearing was held via video with the same participants in attendance as that of June 24, 2020. (ECF No. 19.)   At the end of said hearing, the parties were asked to submit additional information.    The matter is now ripe for review.

Upon consideration of: Defendant's Motion; the Government's Responses thereto; facts elicited at the hearing, and materials filed in accordance with the court's requests, the following Findings of Fact and Conclusions of Law are hereby rendered:

### **Findings of Fact**

1. Defendant is alleged to have been a participant in mass protests that occurred in the City of Philadelphia on May 30, 2020, in response to the Minneapolis police killing of George Floyd on May 25, 2020. (ECF No. 1-1.)

2. Although the Philadelphia protests began in a peaceful manner, they became more violent later in the day and into that evening. (ECF No. 1-1.)

3. One such instance of this violence involved Philadelphia police cars being set on fire and destroyed.        (ECF No. 1-1.)

4. Through surveillance video, aerial newsfeed, social media, photographs from an amateur photographer, a distinctive tattoo, and t-shirt that read "KEEP THE IMMIGRANTS, DEPORT THE RACISTS," investigators were ultimately able to identify Defendant on June 10, 2020 as the individual who—while wearing heat-resistant gloves and goggles on her face—used a flaming piece of cardboard to set one police vehicle on fire, and then used a flaming piece of wooden police barricade to ignite a second police vehicle. (ECF No. 1-1; Govt's Br. Opp'n Bail 1.)

5. On June 15, 2020, a warrant was issued for Defendant's arrest. (Unnumbered ECF Dkt. Entry.)

6. When FBI agents arrived at Defendant's residence to execute the warrant, they were met by evasion and resistance, ultimately requiring two agents to subdue and arrest Defendant.(Detention Hr̵g Tr. 11:1-5, June 19, 2020; Bail Hr'g Tr.

       18:2-25, 19:1-2, July 1, 2020; Govt's Br. Opp'n Bail 6-7.)

7. Upon search of Defendant's residence, agents seized several cell phones, including a damaged one that was found on Defendant's bed with the SIM card missing. (Govt's Br. Opp'n Bail 7.)

8. There was a fork lying next to the phone. (Govt's Br. Opp'n Bail 7.)

9. Once taken into custody, Defendant resisted attempts by booking officers to photograph identifying tattoos. (Bail Hr'g Tr. 19:2-5.)

10. As part of the Federal Detention Center's COVID19 protocols, Defendant was initially placed in segregated housing to complete a mandatory 14-day quarantine period. (Bail Hr'g Tr. 36:20-21, 43:17-25.)

11. On June 16, 2020, Magistrate Judge Richard A. Lloret temporarily detained Defendant and set a Detention Hearing to be held on June 19, 2020. (ECF No. 4.)

12. On June 19, 2020, the government filed a Motion for Pretrial Detention. (ECF No. 5.)

13. Also on June 19, 2020, Magistrate Judge Marilyn Heffley held a Detention Hearing and ultimately granted the government's motion. (ECF No. 6.)

14. On June 22, 2020, counsel for Defendant filed an Appeal to the Magistrate's Detention Order, seeking *de novo* review on the bases that prison presents a serious health risk, Defendant is not a danger to society, and she is a low flight risk. (Def.'s Appeal Det'n Order 3-7, ECF No. 7.)

15. On June 23, 2020, the government filed a Response to Defendant's Motion. (Govt's Br. Opp'n Bail, ECF No. 9.) In further support of her appeal, Defendant has submitted numerous letters from family members, former roommates, friends, and acquaintances, attesting to her good character. (Def's Appeal Det'n Order, Exs. at 11-49.) The government states that several of these letters were written by people who were unaware of the crimes being alleged against Defendant. (Govt's Br. Opp'n Bail 8.)

16. On July 1, 2020, this Court held a video/telephonic *de novo* hearing with Defendant present via telephone. (ECF No. 14.)

       At the conclusion of the hearing, this Court held the matter under advisement and directed: (1) defense counsel to provide further information regarding Defendant's health condition(s); and, (2) both sides to prepare jointly proposed conditions for possible release. Also in response to this Court's

3

        directive, the parties have submitted jointly proposed potential conditions for release. (Joint Submission ¶ ¶ A1, 3, July 17, 2020.)[1]

17. On August 3, 2020, this Court held another hearing via video, in which Defendant participated.  (ECF No. 19.)

## Conclusions of Law

18. "This Court has jurisdiction to review the Magistrate Judge's decision under 18 U.S.C. § 3145(b). That section requires the Court to make a de novo determination of the Magistrate Judge's detention order. However, the reasons articulated by the Magistrate Judge must be given 'respectful consideration.'" *United States* v. *Pere:;,* Criminal Action No. 11-328-02, 2011 U.S. Dist. LEXIS 74330, at *3 (E.D. Pa. July 11, 2011).

19. "The Court retains the discretion to make its determination after reviewing the record developed before the U.S. Magistrate Judge or to accept additional evidence from the parties and rule on the expanded record." *United States* v. *Bastianelli,* Criminal No. 17-305, 2018 U.S. Dist. LEXIS 28141, *11 (W.D. Pa. Feb. 22, 2018)

20. "The court is charged with holding a hearing to determine whether there exists 'any condition or combination of conditions set forth in [18 U.S.C. § 3142(c)] that will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community.'" *United States v. Jackson*, Criminal No. 18-217, 2018 U.S. Dist. LEXIS 158774, at *3, (W.D. Pa. Sept. 18, 2018) (citing 18 U.S.C. § 3142(f))

21. In determining whether bail is appropriate, the court must consider:

    (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
    (2) The weight of the evidence against the person;
    (3) The history and characteristics of the person, including—
    (A), the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

---

[1] In said document, the government makes it clear that they do not support Defendant's release and believe she should remain detained pending trial. (Joint Submission 1.)

    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C.S. § 3142(g).

22. However, "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed . . . an offense listed in section 2332b(g)(5)(B) of title 18, United States Code, for which a maximum term of imprisonment of 10 years or more is prescribed[.]"   18 U.S.C. § 3142 (3)(C).

23. Defendant herein has been charged under 28 U.S.C. § 844(f)(1), which provides in pertinent part: "[w]hoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other personal or real property in whole or in part owned or possessed by, or leased to, the United States, or any department or agency thereof, or any institution or organization receiving Federal financial assistance, shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both." 18 U.S.C. § 844(f)(1).

24. Defendant is also accused of    "directly or proximately . . . creating a substantial risk of injury to any person." 18 U.S.C. § 844(f)(2).

25. The offense at issue here has been deemed a "crime of violence."   *Salim v. Reno*, Civil Action No. 2000-CV-4603, 2000 U.S. Dist. LEXIS 19223, at *8 (Jan. 16, 2000) ("Courts have unanimously construed arson as a crime of violence. *See United States v. Mitchell*, 23 F.3d 1, 2 n.3 (1st Cir. 1994) (finding arson is crime of violence within meaning of Bail Reform Act); *United States v. Marzullo*, 780 F. Supp. 658, 663 (W.D. Mo. 1991) (same); *United States v. Shaker*, 665 F. Supp. 698, 702 (N.D. Ind. 1987) (same); *In re Palacios-Pinera*, 22 I. & N. Dec. 434 (Dec. 18, 1998) (finding arson is crime of violence under INA)).

26. The maximum penalty Defendant faces is 80 years' imprisonment, with a mandatory minimum of 7 years' imprisonment.    18 U.S.C. § 844(f)(2).

27. Defendant has stipulated to probable cause for these offenses.   (ECF No. 6.)

28. Accordingly, there exists a rebuttable presumption in this case that "no conditions or combinations of conditions will reasonably assure the appearance or defendant as required or the safety of the community."   *Jackson*, 2018 U.S.

       Dist. LEXIS 158774, at *4 (citing 18 U.S.C. § 3142( e)(3)).

29. "If the presumption is rebutted, the government has the burden to prove [Defendant is a flight risk or is dangerous] by clear and convincing evidence. *Jackson*, 2018 U.S. Dist. LEXIS 158774, at *10 (citing *United States v. Rice*, No. 17-1450, 2017 WL 6349372 (W.D. Pa. Dec. 13, 2017)).

30. The evidence as it exists now weighs heavily against Defendant, as the government has presented clear and convincing evidence in the form of photographs and video, which visibly implicate Defendant in these crimes. (ECF No. 1-1, ¶¶ 7-18.)

31. Photographs and video clearly show Defendant setting fire to police vehicles as numerous other individuals stood in close proximity.   (ECF No. 1-1, ¶ 8.)

32. Defendant's current physical condition—both on the day of the offenses and currently— has not been shown to be in jeopardy.   (Def.'s Appeal Det'n Order Exs. at 2-10.)

33. Factors such as a mandatory minimum or significant statutory maximum sentence—both of which are applicable here—increase the potential for flight. *United States v. Ortiz*, Criminal Action No. 11-251-08, 2013 U.S. Dist. LEXIS 8845, at *19-20 (E.D. Pa. Jan. 23, 2013).

34. Defendant worked as a massage therapist for thirteen (13) years prior to this incident.   (Def.'s Appeal Det'n Order 4; Bail Hr'g Tr. 13:4-5.)   It is unclear if she was employed at the time of the incident and her financial resources have not been attested to.

35. Defendant has lived in and around Philadelphia, Pennsylvania for the past three decades and has ties to the community, as evidenced by the letters written in support of her character.   (Def.'s Appeal Det'n Order 5.) However, several of these individuals were mere acquaintances of Defendant and it is not clear how many of them were actually aware of the reason they were writing letters in her support. (Def's Appeal Det'n Order, Exs. at 11-49; Govt's Br. Opp'n Bail 6-7.) Moreover, it was presumably Defendant's ties to her community that formed the basis for her actions on May 30, 2020, including the destruction and danger that ensued therefrom.

36. Defendant has appeared without issue at prior court proceedings.   (Def's Appeal Det'n Order, Exs. at 41-42.)

37. Defendant was not on probation, parole, or any other court release prior to the instant offenses.

38. In light of the ongoing protests and civil unrest throughout the country—including the City of Philadelphia—as well as the fact that so many of the letters in support of Defendant spoke of her involvement in various community causes throughout the years, this Court cannot conclude that if released on bail with conditions, Defendant would not continue to constitute a danger to any person or the community with her activism.

39. Aside from the destruction caused to federally funded property, destruction of the police vehicles prevented the officers who utilized those vehicles, to respond to other citizens in need.

40. Video and photographs of Defendant wearing fire resistant gloves and goggles on the day of the protests demonstrates her premeditated plan to cause the destruction and harm alleged.

41. Defendant attempted to elude law enforcement, resisted her arrest, and was not cooperative after her arrest. (Detention Hr=g Tr. 11:1-5, June 19, 2020; Bail Hr'g Tr. 18:2-25, 19:1-5, July 1, 2020; Govt's Br. Opp'n Bail 6-7.)

42. Over the course of the past year alone, Defendant has traveled to Iceland six (6) times.   (Govt's Br. Opp'n Bail 8.)

43. It is unclear from their Treaty that Iceland would treat the type of arson Defendant has been charged with as an extraditable offense. (*Extradition of Criminals and Other Assistance in Criminal Proceedings*, Icelandic Ministry of Justice, Act No. 13, April 17, 1984).

44. With limited exception, Iceland does not permit "extradition in connection with political offences." (*Extradition of Criminals and Other Assistance in Criminal Proceedings*, Icelandic Ministry of Justice, Act No. 13, Art. 5, April 17, 1984).

45. It is unclear whether Iceland would deem Defendants' offenses to be "political," as that determination is discretionary. *(Extradition of Criminals and Other Assistance in Criminal Proceedings ,* Icelandic Ministry of Justice, Act No. 13, Art. 5, April 17, 1984).

46. Upon her arrest, Defendant tendered her passport. (Def.'s Appeal Det'n Order 4.)

47. Pretrial Services has stated "(i]n the event (Defendant] did tamper with (the electronic monitoring bracelet], if she was to cut the bracelet off, obviously we would only know at that point where that bracelet was, and we would not know where she was because it would no longer be

7

      attached to her. So that's concerning in the event that she would do something like that." (Bail Hr'g Tr. 20:13-21.)

48. Circumstantial evidence of record appears to indicate Defendant destroyed one of several cell phones with a fork, as FBI agents were attempting to arrest her at her residence. (Bail Hr'g Tr. 15:13-15; Govt's Br. Opp'n Bail 7.)

49. Inasmuch as Defendant has already attempted to obstruct justice in more than one instance, the Court is not confident Defendant would not attempt to tamper with or remove an electronic monitoring bracelet.

50. Based upon the foregoing, this Court concludes there is no condition or combination of conditions that will reasonably assure Defendant's appearance and the safety of any other person and the community.

51. Defendant's Appeal from the Magistrate's Detention Order is denied and the Magistrate's Order is hereby affirmed.

An appropriate Order follows.

                          BY THE COURT:

                          */s/* C. Darnell Jones, II    J.